**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DONALD WAYNE TYSON #25804-079** | § | |
| | § | |
| **V.** | § | **A-06-CA-741-LY** |
| | § | |
| **HARRELL WATTS,DR. JAMES** | § | |
| **McLAUGHLIN, DR. CALVIN** | § | |
| **YOUNG, GERARDO MALDONADO JR.,** | § | |
| **and JOHN B. FOX** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's civil rights complaint (Document No.1 ); the Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendant McLaughlin (Document No. 21); the Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendants Watts, Young, Maldonado and Fox; Plaintiff's responses thereto (Document Nos. 25, 27); and Defendants' replies (Document Nos. 31-32).  Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I.  BACKGROUND

At the time he filed his civil rights complaint, Plaintiff was an inmate incarcerated in FCI Bastrop.  Plaintiff brings this lawsuit pursuant to <u>Bivens v. Six Unknown Agents of the Bureau of</u>

Narcotics and Dangerous Drugs, 403 U.S. 388, 91 S. Ct. 1999 (1971). According to Plaintiff, he suffered a displaced vertebrae in 1987 at FCI El Reno. In 1992, Plaintiff asserts he had surgery on his back. Plaintiff claims he had taken pain medication for his back since his injury in 1987 until Dr. McLaughlin cut him off of pain medication. Plaintiff apparently also suffers from arm pain.

According to Plaintiff, he was also confirmed as having viral Hepatitis C in 1998. Plaintiff asserts Dr. McLaughlin ordered blood work to be performed on Plaintiff every 90 days. However, Plaintiff does not believe Dr. McLaughlin will ever order treatment for Plaintiff's Hepatitis C. In 2006, he states his liver biopsy showed he had bridging fibrosis, which he explains is a step before cirrhosis. Plaintiff seeks immediate treatment for his Hepatitis C.

Plaintiff also alleges in 2004, upon arriving at FCI Bastrop the dental department accidentally pulled out a filling on a tooth. He claims the tooth was not refilled until nine months later. Plaintiff blames the delay on Dr. Young and concludes he needs a root canal.

Plaintiff sues Dr. James McLaughlin and Dr. Calvin Young, alleging they have been deliberately indifferent to Plaintiff's medical needs. He also sues Harrell Watts, Gerardo Maldonado Jr. and John B. Fox, who were involved in addressing Plaintiff's administrative grievances. In addition to seeking treatment for his Hepatitis C, Plaintiff seek an unspecified amount of monetary damages.

Defendants move to dismiss Plaintiff's claims regarding his back, arm and tooth. They argue he failed to exhaust his administrative remedies with regard to these claims. They suggest Plaintiff's entire complaint should be dismissed even though Plaintiff has exhausted his claim with regard to his request for Hepatitis C treatment.

Defendants also assert their entitlement to qualified immunity.  They explain Dr. McLaughlin did not provide Plaintiff with the drug treatment he seeks for his hepatitis C because Plaintiff did not meet the medical criteria for treatment.  Defendants also explain Plaintiff's pain medication was discontinued by Dr. McLaughlin because the medication may negatively affect Plaintiff's liver.  They deny Dr. McLaughlin was deliberately indifferent to Plaintiff's medical needs.  Defendants Young, Fox, Maldonado and Watts also assert they were not personally involved with Plaintiff's medical care.  As such, they conclude they were not deliberately indifferent to Plaintiff's medical needs.

## II. ANALYSIS

A.     Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA")  provides "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003); Underwood v. Wilson, 151 F.3d 292, 293 (5th Cir. 1998). Exhaustion is now mandatory, "irrespective of the forms of relief sought and offered through administrative avenues."  Booth v. Churner, 532 U.S. 731, 739, 741 n. 6, 121 S. Ct. 1819 (2001). Additionally, "[u]nder the present version of § 1997e, the district court is no longer required to determine whether a prisoner . . . has reasonably and in good-faith pursued his administrative remedies." Underwood, 151 F.3d at 294.

Since the amendment of § 1997e, the Fifth Circuit has taken a strict approach to the exhaustion requirement.  See Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001) (affirming dismissal of inmate's § 1983 claim for failure to exhaust because the inmate "incorrectly filed an administrative appeal rather than a disciplinary appeal"); Wright v. Hollingsworth, 260 F.3d 357,

358 (5th Cir. 2001) (stating "[n]othing in the [PLRA] . . . prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems") (footnote omitted). On the other hand, the Fifth Circuit has also stated the exhaustion requirement "may be subject to certain defenses such as waiver, estoppel, or equitable tolling." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998).

The Fifth Circuit has recognized that the PLRA does not define the phrase "such administrative remedies as are available" contained in § 1997e(a). Underwood, 151 F.3d at 295. Because the statute does not provide a definition, its terms are to be construed in accordance with their ordinary meaning. Id. The Fifth Circuit considered Webster's New International Dictionary definition of the word "available" as, among other things, "immediately utilizable, and that is accessible or may be obtained: personally obtainable." Id. (quoting Webster's New Int'l Dictionary, 150 (3rd ed.1981)) (emphasis added).

The Supreme Court has made clear that "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." Booth, 532 U.S. at 741, 121 S. Ct. at 1825, n.6. Additionally, the Supreme Court has held the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002). More recently, the Supreme Court held when a complaint contains both exhausted and unexhausted claims, only the unexhausted claims should be dismissed. Jones v. Bock, ___ S. Ct. ___, 2007 WL 135890 at *14 (Jan. 22, 2007).

The Federal Bureau of Prisons, which administers the prison in which Plaintiff is incarcerated, has a four-step process for resolving complaints by prisoners. Initially, a prisoner must

4

attempt to informally revolve the complaint with staff by filing a BP-8 form.  28 C.F.R. § 542.13(a).

If informal attempts are unsuccessful, the prisoner must submit a written complaint to the warden

using a BP-9 form.  28 C.F.R. § 542.13(b).  If the prisoner is not satisfied with the warden's

response, he may appeal to the Regional Director using a BP-10 form.  28 C.F.R. § 542.15.  If still

unsatisfied, the prisoner may appeal to the Office of General Counsel using form BP-11.  28 C.F.R.

§ 542.15.

    Attached to Plaintiff's complaint is his BP-8.  Plaintiff states, "Dr Garza initially had stated

to me he would like to send me to Springfield for the Hepatitis C treatment available.  I have a very

high viral load and have to take medicine daily to keep my amonia [sic] level down.  The Hospital

administration I feel is showing or practicing a 'deliberate indifference' to my health in the above

matter."  Plaintiff requested that he be enrolled in the six-month treatment program for Hepatitis C.

Dr. McLaughlin responded, "According to B.O.P criteria you would certainly not qualify for even

a tertiary 'workup.'  I find not one time that your L.F.T.'s have ever been abnormal.  A.L.T.'s most

over 108 - yours are between 40 & 50's.  Blood ammonia must be frozen and be from arterial blood

to be accurate in any way.  Your viral load is high and will be monitored."  Unsatisfied with Dr.

McLaughlin's response, Plaintiff submitted a BP-9 to the warden.  In his BP-9 Plaintiff indicated he

could not do any kind of repetition with his arm and is no longer receiving pain medication due to

his liver.  Plaintiff further indicated nothing was being done with regard to his liver problem,

including a liver biopsy that had been ordered but never performed.  Plaintiff again requested

treatment for his Hepatitis C.  Associate Warden Bentley Stires responded on behalf of Warden Fox.

Stires informed Plaintiff that his complaint regarding arm pain would not be addressed, because

Plaintiff had not included that claim in his "Attempt at Informal Resolution," the BP-8.  With regard

to Plaintiff's request for Hepatitis C treatment, Stires explained the Bureau of Prisons ("BOP") has strict protocols for the treatment of Hepatitis. He further explained all of the pre-treatment steps in the protocols must be completed before treatment could be considered and that Plaintiff's pre-treatment was in progress. Plaintiff's request for treatment for his Hepatitis C was denied pending completion of Plaintiff's ongoing medical work-up.

Plaintiff appealed this decision by filing a BP-10 with the Regional Office. Plaintiff contended the response to his BP-9 was deliberate indifference to his arm pain, because the issue was not addressed. He also pointed out that Hepatitis C is a killer and he needed treatment. Deputy Regional Director David Berkebile responded on behalf of Regional Director Maldonado. He noted Plaintiff was currently being evaluated to determine whether Plaintiff was a possible candidate for treatment and that Plaintiff had not provided evidence to support his allegation that he was being treated with deliberate indifference.

Plaintiff appealed this decision by filing a BP-11 with the Central Office. He indicated he had injured his elbow curling a weight and he has suffered pain and experienced numbing in his fingers for seven months. He also indicates he is no longer receiving pain medication for his back because of his Hepatitis C. He informed the Central Office that he had been told by the doctor that he would not receive treatment for his Hepatitis C unless he asked the court. Plaintiff asserted he is forced to work and he cannot sleep due to the pain. Harrell Watts, Administrator for National Inmate Appeals responded that Plaintiff's laboratory studies indicated Plaintiff's condition did in fact meet the criteria for Hepatitis C treatment, but that staff had not been deliberately indifferent to Plaintiff's medical needs, and had been attentive to his medical. Watts noted that because staff was

in the process of taking the preliminary steps necessary to provide Plaintiff with Hepatitis C treatment, his response was for informational purposes only.

Upon review of Plaintiff's administrative claims, it is clear the only issue that Plaintiff has exhausted is his request for treatment for Hepatitis C.  Plaintiff may not raise in an appeal issues not raised in the lower level filings. 28 C.F.R. § 542.15(b)(2).  Accordingly, Plaintiff's claims regarding his arm, back and tooth should be dismissed for failure to exhaust his administrative remedies.

      B.      Request for Treatment

Plaintiff was approved for treatment for his Hepatitis C on November 30, 2006.  (Watts Decl. at ¶ 6).  Plaintiff received his first injection on December 13, 2006.  (Plaintiff's Response [#27] at 2).  Accordingly, Plaintiff's request for Hepatitis C treatment is moot.

      C.      Standard of Review Under Fed. R. Civ. P. 56(c)

Plaintiff's remaining claim is for monetary damages relating to the alleged denial of treatment for his Hepatitis C.  The Court will analyze Plaintiff's remaining claim pursuant to Rule 56(c).  A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996);  Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992).  When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.  Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995);  Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986).  The movant with the burden of

proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed. R. Civ. P. 56(e); Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

      D.    Qualified Immunity

Defendants assert their entitlement to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of

Beaumont, 958 F.2d 616 (5th Cir. 1992).  "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law."  Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).  In general, "qualified immunity represents the norm."  Id.  With respect to a ruling on qualified immunity, the first question a court should address is "whether the plaintiff has alleged a violation of a clearly established constitutional right."  Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789 (1991); Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995).  If the Plaintiff has alleged a constitutional violation, the court must then determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions.  Hale, 45 F.3d at 917, citing Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S. Ct. 1081 (1994); Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993).

Claims of qualified immunity require a two step analysis.  As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  If the allegations do not establish the violation of a constitutional right, the official is entitled to qualified immunity.  Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.  If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202, 121 S. Ct. at 2156.  If an official makes a reasonable mistake as to what the law requires, the officer is entitled to immunity.  Id. at 205, 121 S. Ct. at 2158.

E.    <u>Medical Care</u>

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs states a civil rights violation, but a showing of negligence does not.  <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997); <u>Jackson v. Cain</u>, 864 F.2d 1235, 1246 (5th Cir. 1989).  However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation.  <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985); <u>Norton</u>, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. <u>Varnado v. Collins</u>, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action.  <u>Graves v. Hampton</u>, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs.  <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs.  <u>Spears v. McCotter</u>, 766 F.2d 179, 181 (5th Cir. 1985).  It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995).

Deliberate indifference is an extremely high standard to meet.  A prison official acts with deliberate indifference only if he knows that an inmate faces a substantial risk of serious bodily harm

10

and he disregards that risk by failing to take reasonable measures to abate it.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984 (1994).  A plaintiff must show that the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Domino v. Texas Dep't Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001) (quoting <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985).

In Plaintiff's case, the summary judgment evidence shows Dr. McLaughlin ordered seven blood tests over the course of one year in order to monitor Plaintiff's ALR levels.  (McLaughlin Decl. at ¶ 8).  He met with Plaintiff on six occasions over the course of the year to discuss his Hepatitis C.  (<u>Id.</u> at ¶ 10).  He tested Plaintiff twice to determine his level of Alpha-Feto protein.  (<u>Id.</u> at ¶ 11).  He also ordered an ultrasound of Plaintiff's abdominal region and ordered a liver biopsy. (<u>Id.</u> at ¶ 12-13).  In addition, Dr. McLaughlin tested Plaintiff twice to measure his viral load.  (<u>Id.</u> at ¶ 14).

Dr. McLaughlin explains the BOP has promulgated an Algorithm for Treatment of Hepatitis C, which serves as a checklist for physicians in determining the treatment of patients infected with Hepatitis C.  (<u>Id.</u> at ¶ 6).  In treating Plaintiff's Hepatitis C, Dr. McLaughlin relied on an Algorithm that was dated January 2003.  (<u>Id.</u>).  Under step "IV" of the January 2003 Algorithm, a patient could not commence the Interferon and Ribavirin drug therapy if there was any "contraindication[] to interferon or ribavirin."  (<u>Id.</u> at ¶ 7).  According to Dr. McLaughlin, a "Normal ALT" was an "Absolute Contraindication[]" to Interferon.  (<u>Id.</u>).  Because Plaintiff's ALT levels did not meet the requirements of the January 2003 Algorithm, Dr. McLaughlin concluded Plaintiff was not eligible for drug therapy.  (<u>Id.</u> at ¶ 9).

In April 2005, the BOP issued an updated "Algorithm for Treatment of Hepatitis C." (Id. at ¶ 18). Then, in October 2005, the BOP issued updated "Guidelines for the Prevention and Treatment of Viral Hepatitis." (Id.). However, Dr. McLaughlin was not aware that the BOP had updated its medical guidelines. (Id.). Under the 2005 Algorithm, Plaintiff's condition met the criteria for treatment. However, as explained by Dr. McLaughlin, Plaintiff had not completed all the steps in the Algorithm. (Id. at ¶ 19). According to Dr. McLaughlin, he scheduled Plaintiff for a psychiatric evaluation on November 16, 2006, in order to complete the final step of the Algorithm. (Id. at ¶ 20). Plaintiff received a mental health clearance from the psychiatrist, and Plaintiff's completed medical packet was sent to the Chief Physician of Health Programs in Washington, D.C., for a final determination as to Plaintiff's eligibility for the drug therapy. (Id.). As mentioned above, Plaintiff was approved for drug therapy on November 30, 2006. (Watts Decl. at ¶ 6). Although Dr. McLaughlin erred in using the outdated Algorithm, his actions certainly did not amount to deliberate indifference to Plaintiff's medical needs. As such, Dr. McLaughlin is entitled to qualified immunity.

Defendants Maldonado and Fox are also entitled to qualified immunity. Plaintiff has failed to demonstrate any personal involvement on the part of Defendants Maldonado and Fox. Plaintiff appears to have named these individuals as defendants because their names appeared on responses to Plaintiff's grievances. However, as explained by Defendants, their assistants addressed and signed the grievances. There is simply no evidence Maldonado or Fox played any role in the administrative remedy process in this case.

Defendant Watts is also entitled to qualified immunity. Although Watts did respond to Plaintiff's BP-11, Plaintiff has failed to establish that Watts was deliberately indifferent to Plaintiff's medical care. In his June 14, 2006 response, Watts indicated Plaintiff was a candidate for treatment

but noted staff had been attentive to his medical concerns and provided appropriate medical care for his condition. Watts indicates the Algorithm was completed for Plaintiff on or about November 22, 2006, and on November 30, 2006, Plaintiff was approved for the drug therapy. (Watts Decl. at ¶ 6).

Finally, Defendant Young is also entitled to qualified immunity. As explained by Young, he is the Health Services Administrator at FCI Bastrop. (Young Decl. at ¶ 2). Young asserts his duties include responsibility over planning, supplies and operations. (Id.). Young maintains he has no involvement in the medical treatment of inmates at FCI Bastrop and that medical treatment for all inmates at FCI Bastrop is administered by Dr. McLaughlin and his medical staff. (Id.). Plaintiff has not provided the Court with any competent summary judgment evidence to prove otherwise.

In sum, Plaintiff's claims against Defendants Maldonado, Fox, Watts and Young are based upon conjecture, speculation, and unsupported claims of conspiracy. Such unsubstantiated assertions cannot form the foundation for a constitutional claim, let alone satisfy Plaintiff's burden of overcoming Defendants' defense of qualified immunity.

### III. RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment, **DISMISS WITHOUT PREJUDICE** for failure to exhaust administrative remedies Plaintiff's claims brought against Defendants with regard to his arm, back and tooth, **DISMISS AS MOOT** Plaintiff's request for Hepatitis C treatment, and **DISMISS WITH PREJUDICE** Plaintiff's claims requesting monetary damages regarding Hepatitis C treatment.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.   The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   See 28 U.S.C. § 636(b)(1)(C);   Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);   Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 12th day of February, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE